# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### FEBRUARY SESSION, 1997

FILED

June 6, 1997

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **WENDELL KING, JR.,** | ) | |
| | ) | No. 01C01-9603-CR-00086 |
| Appellant | ) | |
| | ) | DAVIDSON COUNTY |
| vs. | ) | |
| | ) | Hon. Seth W. Norman, Judge |
| **STATE OF TENNESSEE,** | ) | |
| | ) | (Post-Conviction) |
| Appellee | ) | |

For the Appellant:

**PAULA OGLE BLAIR**
176 Second Avenue, North
Suite 406
Nashville, TN 37201

For the Appellee:

**CHARLES W. BURSON**
Attorney General and Reporter

**LISA A. NAYLOR**
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493

**VICTOR S. (TORRY) JOHNSON III**
District Attorney General

**RONALD E. MILLER**
Asst. District Attorney General
Washington Square, Suite 500
222-2nd Avenue, North
Nashville, TN 37201-1649

OPINION FILED: _____

AFFIRMED

**David G. Hayes**
Judge

## OPINION

The appellant, Wendell King, Jr., appeals the Davidson County Criminal Court's dismissal of his petition for post-conviction relief.  In this appeal, he raises the following issues:

> I.  Whether trial counsel was ineffective for failing to locate two witnesses;
>
> II.  Whether the burden of producing witnesses at the post-conviction hearing is "inherently unfair" to an incarcerated petitioner;
>
> III.  Whether the trial court properly denied the appellant's motion for a continuance; and
>
> IV.  Whether the post-conviction court was biased against the appellant.[1]

After a  review of the record, we conclude that the appellant's contentions are without merit.  The judgment of the trial court is affirmed.

## I.  Background

The appellant was convicted of the felony murder and aggravated rape of Jeannie Barlow, who was eighteen years old at the time of her death.  Although no direct evidence connecting the appellant to the crimes was presented at trial, the scientific evidence was overwhelming.  His hair, his semen, and his saliva matched that left on the victim's body by the murderer.   King v. State, No. 01C01-9310-CR-00366 (Tenn. Crim. App. at Nashville, Aug. 4, 1994), perm. to appeal denied, (Tenn. Oct. 31, 1994).  Moreover, the DNA testing completed by an FBI technician excluded 99.9999 percent of the population as possible suspects.  Id.  As a result of these convictions, the appellant was sentenced to

---

[1]All four of the appellant's issues relate either directly or indirectly to the two missing witnesses identified as "Dale" and "Wallace."

life imprisonment plus thirty years. His convictions and sentences were affirmed on direct appeal by this court. See King, No. 01C01-9310-CR-00366. On March 21, 1995, the appellant filed a *pro se* post-conviction petition. Subsequently, the appellant was provided appointed counsel, who filed an amendment to the petition.

At the post-conviction hearing, the appellant testified that his trial counsel was ineffective for failing to locate and question two potentially favorable witnesses, "Dale" and "Wallace." Although he did not know the surnames of these two men, the appellant did know where they lived at the time of the murder and the type of cars they drove. The appellant argued that these witnesses would have established that the appellant and the victim had previously engaged in consensual sexual intercourse. In addition, he contended that these witnesses would have also discredited the testimony of the victim's mother who testified against him at trial.[2] The appellant stated that trial counsel was aware of these potential witnesses, but failed to conduct a proper investigation which would reveal their whereabouts. Moreover, he averred that the trial court wrongfully denied him a continuance on the first day of his trial so that "Dale" and "Wallace" could be located. Despite his allegations, the appellant conceded that these men knew nothing about his actions on the day of the rape and murder of the victim.

The appellant's trial counsel testified that the appellant did provide him with the names of the two potential witnesses identified only as "Dale" and "Wallace," however, all efforts to locate them were unsuccessful. Trial counsel indicated that two investigators with the Metro Public Defender's Office repeatedly attempted to locate the men during the pre-trial investigation of this

---

[2]At trial, the victim's mother acknowledged that the appellant and her daughter knew each other and that the appellant previously had spent the night in her apartment.

3

case and throughout the trial, but were unable to do so. Counsel further testified that he met with the appellant on four or five occasions and provided written evidence to further document the time spent on the appellant's case. With regard to the denial of the appellant's motion for continuance, trial counsel stated that the trial court denied the motion on the ground that the appellant had already had nineteen months to locate any potentially favorable witnesses.

At the conclusion of the hearing, the court dismissed the appellant's petition finding sufficient grounds existed for denying the appellant's motion for continuance and that trial counsel's performance was not deficient.

## II. Ineffective Assistance

The appellant first alleges that he was denied the effective assistance of counsel because his trial counsel failed to locate two potentially favorable witnesses. To succeed in such a challenge, the appellant must show, by a preponderance of the evidence, Taylor v. State, 875 S.W.2d 684, 686 (Tenn. Crim. App. 1993), perm. to appeal denied, (Tenn. 1994), first, that counsel's representation fell below the range of competence demanded of attorneys in criminal cases, Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), and, second, that, but for these errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068 (1984); State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn.), cert. denied, 493 U.S. 874, 110 S.Ct. 211 (1989). On post-conviction review, there is a strong presumption of satisfactory representation, Barr v. State, 910 S.W.2d 462, 464 (Tenn. Crim. App. 1995), and the appellant bears the burden of proving his allegations by a preponderance of the evidence. Taylor v. State, 875 S.W.2d 684, 686 (Tenn. Crim. App. 1993). Moreover, when this court undertakes review of a lower

4

court's decision on a petition for post-conviction relief, the lower court's findings of fact are given the weight of a jury verdict and are conclusive on appeal absent a finding the evidence preponderates against the judgment. Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978), cert. denied, 441 U.S. 947, 99 S.Ct. 2170 (1979); Taylor v. State, 875 S.W.2d 684, 686 (Tenn. Crim. App. 1993), perm. to appeal denied, (Tenn. 1994).

When an appellant contends that trial counsel failed to locate potential witnesses in support of his defense, he bears the burden of presenting these witnesses at the evidentiary hearing. Black v. State, 794 S.W.2d 752 (Tenn. Crim. App. 1990)(emphasis added). Before he can be entitled to relief on this ground, the appellant must produce a material witness(es) who (1) could have been found by a reasonable investigation and (2) would have testified favorably in support of his defense if called. Black, 794 S.W.2d at 753. If the appellant fails to present such witnesses, he fails to establish the prejudice prong mandated by Strickland v. Washington, *supra*. Black, 794 S.W.2d at 753. The appellant, in the case before us, did not present the alleged material witnesses, identified as "Dale" and "Wallace." Moreover, from the appellant's testimony at the hearing, it is impossible to determine how the testimony of these witnesses would have been relevant to his case.[3] This issue is without merit.

In a related issue to the appellant's claim of ineffectiveness, he contends that production of the two witnesses at the post-conviction hearing unfairly shifts the burden of proof upon him. The appellant acknowledges that he bears the burden of proving his claims, however, he argues that, because of his continuous incarceration following arrest, this burden is inherently unfair. It is well-settled within this state that the defendant has the burden of proving his allegations by a

---

[3]Among other reasons we note that Tenn.R.Evid. 412(c)(3) permits introduction of the victim's sexual behavior with the accused only when the defendant relies upon consent. Consent was not relied upon by the appellant in this case. See King, No. 01C01-9310-CR-00366.

preponderance of the evidence, regardless of the nature of the allegation and the custodial situation of the defendant. Taylor, 875 S.W.2d at 686; Black, 794 S.W.2d at 752. The appellant, in the present case, has failed to carry this burden. This contention is without merit.

### IV. Motion for Continuance

The appellant also contends that he was denied his right to compulsory process by the trial court's refusal to grant a continuance so that witnesses for the defense could be secured.[4] Specifically, he asserts that, because he was incarcerated prior to his trial, he needed additional time to secure two witnesses, "Dale" and "Wallace," whom trial counsel had been unable to locate.

The decision whether to grant a continuance "rests within the discretion of the trial court." State v. Morgan, 825 S.W.2d 113, 117 (Tenn. Crim. App. 1991). A denial of a continuance will not be disturbed "unless it appears upon the face of the record that the trial judge abused his discretion and prejudice enured to the accused as a direct result of the trial judge's ruling." State v. Dykes, 803 S.W.2d 250, 257 (Tenn. Crim. App. 1990). Moreover, in order to gain relief in the post-conviction context, the appellant must also demonstrate that the trial court's denial abridged his constitutional right to fundamental fairness in the conviction process. Conner v. Bowen, 842 F.2d 279, 283 (11th Cir. 1988). The granting or refusal of a continuance "rarely reaches constitutional proportions." State v. Harris, No. 03C01-9311-CR-00381 (Tenn. Crim. App. at Knoxville, Feb. 28, 1996),perm. to appeal denied, (Tenn. Feb. 3, 1997) (citing Knighton v. Maggio, 740 F.2d 1344, 1350 (5th Cir.), cert. denied, 469 U.S. 924, 105 S.Ct. 306 (1984).

---

[4]We note that the appellant's Sixth Amendment claim of a denial of his right to compulsory process is misplaced. The record reflects that compulsory process to obtain witnesses was in fact issued on behalf of the appellant at trial.

6

After considering the merits of this issue, we cannot conclude that the trial court's denial of the appellant's motion for additional time to secure the presence of unlocated witnesses implicates due process. In determining whether the trial court's action rendered the appellant's trial fundamentally unfair, we must look for actual prejudice to the appellant. Continuances may be granted for the purpose of securing the presence of identifiable witnesses if their testimony is material and admissible. At the post-conviction hearing, as well as before the trial court, the appellant failed to demonstrate that these witnesses were material witnesses or that their presence could have been secured at the trial if given additional time. Accordingly, the trial court did not abuse its discretion by denying the appellant's motion for continuance. This issue is without merit.

## V. Bias of Post-Conviction Judge

In his final issue, the appellant asserts that he did not receive a full and fair hearing on all the grounds raised in his post-conviction petition because the post-conviction judge was biased against him. He avers that the court denied him his right to testify as to the importance of the missing witnesses. Specifically, he complains that the trial court's comment that, "prior sexual intercourse has nothing to do with the charge of rape," demonstrated the court's bias against him.[5]

---

[5]MS. BLAIR: Now, how was Mr. Moore's representation not up to par, not effective? . . .

APPELLANT: Well, . . . I kept repeating myself and telling him that these two witnesses was key to my defense because the DA's theory was that the relationship between me and the victim wasn't the way I said it, which it was an intimate relationship. So, they [sic] theory was that I raped her.
And these two witnesses could show that the night that I met this victim, we had sexual intercourse, willingly, the first night. The mother also had sex with Dale and Wallace. Now, being that I can't tell you their last name, I don't know their last name. But I know where they lived at. I know

7

During the hearing, the appellant stated that the missing witnesses would have testified that, prior to the victim's rape and murder, he and the victim had engaged in consensual intercourse. This fact alone does not make the witnesses material, or that, if produced, their testimony would have been relevant and, therefore, admissible. The standard employed in determining bias is an objective one. Alley v. State, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994). Moreover, adverse rulings by a court are not usually sufficient grounds to establish bias. Id. at 821. The comment made by the post-conviction court does not indicate bias or that the trial court failed to consider the appellant's testimony. Accordingly, there is nothing in the record to indicate that the post-conviction judge was biased or unfair. This issue is without merit.

## VI. Conclusion

After a review of the record and the issues presented by the appellant, we conclude that the post-conviction court properly dismissed the petition for post-conviction relief. The judgment of the post-conviction court is, therefore, affirmed.

_____
DAVID G. HAYES, Judge

---

the kind of cars they drive. . . .

They could have told the Court and proved the DA's theory that I didn't have to rape her. Do you understand? That's what I'm saying.

MS. BLAIR: So, let me just reiterate . . . .

COURT: Prior sexual intercourse has nothing to do with the charge of rape, Ms. Blair.

CONCUR:

_____
GARY R. WADE, Judge

_____
J. CURWOOD WITT, JR., Judge