## IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
## JANUARY SESSION, 1998

**FILED**

**February 12, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **RICKEY LEE NELSON,** | ) | |
| | ) | No. 02C01-9607-CR-00223 |
| **Appellant** | ) | |
| | ) | **SHELBY COUNTY** |
| **vs.** | ) | |
| | ) | Hon. John P. Colton, Jr., Judge |
| **STATE OF TENNESSEE,** | ) | |
| | ) | **(Post-Conviction)** |
| **Appellee** | ) | |

For the Appellant:

**Paula Skahan**
Attorney at Law
140 North Third Street
Memphis, TN  38103

For the Appellee:

**Charles W. Burson**
Attorney General and Reporter

**Kenneth W. Rucker**
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493

**William L. Gibbons**
District Attorney General

**Ms. Lorraine Craig**
Asst. District Attorney General
Criminal Justice Complex
Suite 301, 201 Poplar Street
Memphis, TN  38103

OPINION FILED: _____

AFFIRMED

**David G. Hayes**
Judge

**OPINION**

The appellant, Rickey Lee Nelson,[1] appeals the denial of his petition for post-conviction relief and denial of his motion requesting state-funded DNA testing. He is currently serving an effective twenty-five year sentence in the Department of Correction, resulting from his 1991 Shelby County convictions for robbery with a deadly weapon, second degree burglary, and aggravated rape.[2] His convictions were affirmed on direct appeal to this court. See State v. Nelson, No. 02C01-9103-CR-00050 (Tenn. Crim. App. at Jackson, Oct. 2, 1991), perm. to appeal denied, (Tenn. Feb. 24, 1992). On June 15, 1993, the appellant, proceeding *pro se*, filed the instant petition for post-conviction relief. On October 11, 1993, he filed a motion for state-funded DNA testing. After hearings on the merits of the motion and the post-conviction petition, the trial court denied the relief sought. The issues presented in these proceedings are consolidated for purposes of appeal.

In this appeal, the appellant raises the following issues:

I. Whether due process requires the State of Tennessee to provide indigent non-capital defendants funding for scientific testing in post-conviction proceedings;

II. Whether trial counsel was ineffective for waiving the appellant's right to a sequestered jury;

---

[1]The record reflects that although the appellant was indicted in this case under the name Rickey Lee Nelson and all the pleadings reflect the name Rickey Lee Nelson, he is incarcerated for these crimes under the alias "Russell Wellington, #122766."

[2]The relevant portion of the trial court's findings of fact in its ORDER DENYING DNA TESTING provides the following background information:

> The appellant's convictions for aggravated rape, aggravated robbery and burglary [were] based primarily on the victim's identification of the petitioner as her assailant, while the victim's daughter independently corroborated her mother's identification of the petitioner. Before any unlawful events occurred, both mother and daughter had a protracted period of non-traumatic exposure to the petitioner in a lighted area. Their positive identification of the petitioner as the mother's assailant subsequently resulted. Prior to the first encounter that the victim and her daughter had with the petitioner one day before the mother was assaulted, the victim and her daughter claimed to have never seen the petitioner before. Therefore, the victim and her daughter apparently had no motive to allege false accusations against the petitioner.

2

III. Whether trial counsel was ineffective for failing to request DNA testing which the appellant contends would have established his innocence; and

IV. Whether trial counsel was ineffective for failing to conduct an adequate pre-trial investigation in preparation of the appellant's defense.

After a review of the issues before us, we affirm the trial court's judgment.

## I. Scientific Services for Non-capital Indigent Post-Conviction Petitioner

The appellant contends that the trial court's denial of his motion requesting state funds for DNA testing at the post-conviction level violates both his state and federal rights to due process, because it denies him the ability to establish prejudice arising from trial counsel's ineffectiveness. Accordingly, the appellant argues that because his constitutional right to effective assistance of counsel has been impaired, as an indigent, he is entitled to state funding so that he may be provided the opportunity to advance this claim of constitutional impairment. Our supreme court has addressed this precise issue and held that "the state is not required to provide expert assistance to indigent non-capital post-conviction petitioners." Davis v. State, 912 S.W.2d 689, 696-697 (Tenn. 1995); see also Vandygriff v. State, No. 01C01-9603-CC-00089 (Tenn. Crim. App. at Nashville, Feb. 28, 1997). In Davis, the court noted that in this state, there is no rule or statute that entitles a non-capital post-conviction petitioner state funded expert assistance. Id. at 695. In denying the funding of experts, the court observed the distinction between providing indigent defendants the basic tools of an adequate defense at trial and on direct appeal as opposed to those at the post-conviction level. Consistent with previous analyses of this distinction, our supreme court reiterated:

> [a] direct appeal is the primary avenue for review of a conviction and sentence. Once the process goes beyond the trial and direct appeal as of right stage, the state has no duty to 'duplicate the legal arsenal that may be privately retained by a criminal defendant in a continuing effort to reverse his conviction.'

Id. at 696 (citing <u>Barefoot v. Estelle</u>, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391 (1983); <u>Ross v. Moffit</u>, 417 U.S. 600, 616, 94 S.Ct. 2437, 2447 (1974)). In accordance with our supreme court's decision in <u>Davis</u>, this issue is without merit.

## II. Ineffective Assistance of Counsel

Next, the appellant contends that he was denied effective representation of counsel due to counsel's: (1) waiver of the appellant's right to a sequestered jury; (2) failure to conduct an adequate pre-trial investigation in preparation of the appellant's defense; and (3) failure to request DNA testing. Initially, we note that the appellant's challenge regarding the waiver of a sequestered jury has been previously determined by this court on direct appeal. See <u>Nelson</u>, No. 02C01-9103-CR-00050. The fact that this issue is now couched in terms of ineffective assistance of counsel is of no consequence. See <u>Overton v. State</u>, 874 S.W.2d 6, 12 (Tenn. 1994) ("to allow every error committed by the trial court to be recast in a post-conviction petition as an ineffective assistance of counsel allegation would be to subvert the limited purposes of the post-conviction procedure"). An issue that has been previously determined on direct appeal cannot support a petition for post-conviction relief and is, therefore, excluded. See Tenn. Code Ann. § 40-30-111, -112 (a)(1990)(*repealed* 1995); <u>State v. Denton</u>, 938 S.W.2d 373, 377 (Tenn. 1996); <u>House v. State</u>, 911 S.W.2d 705, 710 (Tenn. 1995), <u>cert. denied</u>, --U.S.--, 116 S.Ct. 1685 (1996).

### A. Standard for Determining Ineffective Assistance of Counsel

Before an appellant may succeed in a challenge regarding counsel's performance, he must show, by a preponderance of the evidence, <u>Taylor v. State</u>,

4

875 S.W.2d 684, 686 (Tenn. Crim. App. 1993),[3] perm. to appeal denied, (Tenn. 1994), first, that counsel's representation fell below the range of competence demanded of attorneys in criminal cases, Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), and, second, that, but for these errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068 (1984); State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn.), cert. denied, 493 U.S. 874, 110 S.Ct. 211 (1989). On post-conviction review, there is a strong presumption of satisfactory representation, Barr v. State, 910 S.W.2d 462, 464 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1995). Moreover, when this court undertakes review of a lower court's decision on a petition for post-conviction relief, the lower court's findings of fact are given the weight of a jury verdict and are conclusive on appeal absent a finding that the evidence preponderates against the judgment. Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978), cert. denied, 441 U.S. 947, 99 S.Ct. 2170 (1979); Taylor, 875 S.W.2d at 686.

### 1. Failure to Adequately Investigate

At the post-conviction hearing, the appellant provided numerous instances of counsel's alleged deficient performance to support his claim that counsel was ineffective for failing to adequately investigate his case. He maintains that trial counsel had insufficient contact with him prior to trial and that trial counsel failed to pursue witnesses that would have provided the appellant with an alibi. The appellant testified that he provided counsel with the name of his fiancee at the time, Stephanie Johnson, and the names of three co-workers, Donald McCorkle, John Warner, and "Joe." The appellant asserted that these witnesses could attest to his presence in Jackson, Tennessee, on the day of the instant offenses. None of these potential alibi witnesses testified at the post-conviction hearing.

---

[3]For post-conviction claims filed after May 10, 1995, the burden of proof is by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f) (1996 Supp.).

Trial counsel testified that he met with the appellant eight times between arraignment and trial. With regard to the potential alibi witnesses, counsel stated that, prior to the instant proceeding, he had never heard of Donald McCorkle, John Warner, and "Joe." He conceded, however, that the appellant did provide him with the names of two witnesses, Stephanie Johnson and Harry Shaw. Through an investigator, counsel did contact Stephanie Johnson. Johnson indicated that she could not recall the specific day in question and that she would not lie for the appellant. The investigator, despite diligent efforts, was not able to locate Harry Shaw.

The trial court concluded that trial counsel's investigation of potential alibi witnesses was not deficient. We agree. When an appellant contends that trial counsel failed to locate potential witnesses in support of his defense, he bears the burden of presenting these witnesses at the post-conviction evidentiary hearing. Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Before he can be entitled to relief on this ground, the appellant must produce a material witness(es) who (1) could have been found by a reasonable investigation and (2) would have testified favorably in support of his defense if called. Id. If the appellant fails to present such witnesses, he fails to establish the prejudice prong mandated by Strickland v. Washington, *supra*. Black, 794 S.W.2d at 758. This issue is without merit.

### 2. Failure to Request DNA Testing

The appellant argues that counsel was ineffective for failing to request DNA testing prior to trial. He conceded that counsel, before trial, did request and receive funding for serology tests that would permit ABO blood type comparisons. However, the appellant stated that he requested that counsel look into the possibility of obtaining DNA testing. Counsel explained to the appellant that DNA testing "was very expensive," that "it took quite some time to get the results back," and could

either "exclusively exclude him" or could "point the finger right between his eyes." After this explanation, trial counsel was unable to obtain a definitive response from the appellant as to whether he wanted to pursue DNA testing. Counsel maintained that he "never would have requested [DNA testing] without [the appellant] wanting it." Additionally, counsel testified that, at the time of the appellant's trial, "[DNA evidence] had [not] been ruled as admissible by a Tennessee court." On the first day of trial, the appellant learned that the results of the ABO blood type grouping[4] were inconclusive. At that point, the appellant stated that he wanted DNA testing. Counsel then moved for a continuance of the appellant's scheduled trial in order that DNA testing could be performed. This motion was denied.

The appellant now claims that counsel's failure to insist upon DNA testing amounted to ineffectiveness because the only issue at trial was the perpetrator's identity and because the DNA evidence would have exonerated the appellant. Thus, he argues he was prejudiced by counsel's failure to zealously represent his client's interest in obtaining DNA analysis.

The State cites, as dispositive of this issue, an unpublished opinion of this court, Mitchell v. State, No. 01C01-9507-CR-00227 (Tenn. Crim. App at Nashville, May 9, 1996). We agree that Mitchell is applicable to the present case. In Mitchell, as in the present case, a secretor test was performed prior to the defendant's trial. Id. The results of the testing were inconclusive. Id. Trial counsel testified that he did not request a DNA test because he did not wish to risk creating evidence that would implicate the defendant. Id. Judge Welles, writing on behalf of this court, determined that "the issue concerning the DNA test. . . fall[s] under the category of trial tactics. Counsel's decision not to pursue a DNA test was based on a realistic apprehension of creating detrimental evidence that did not exist. . . . [W]e do not

---

[4]These tests are possible only if the accused is a secretor, i.e., if the accused is a person whose ABO blood type can be detected in his body fluid secretions. Because the appellant was a nonsecretor, the tests were inconclusive.

second guess the trial tactics of counsel." Id.

In the case *sub judice*, considering that the appellant refused to supply counsel with a definitive answer regarding the testing, that the testing could be detrimental as well as exculpatory, and that, at the time of the trial, DNA testing was considered a novel issue whose admissibility and reliability were questioned by Tennessee courts,[5] see State v. Overbay, 806 S.W.2d 212, 214 (Tenn. Crim. App. 1990), we cannot conclude that counsel's decision not to pursue DNA testing amounted to deficient performance. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Our disposition of the deficient performance prong of Strickland makes an analysis of the prejudice prong unnecessary. However, our review of this issue indicates that it is also impossible to establish that the appellant was prejudiced by the error alleged. To establish prejudice, the appellant was required to show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different. Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. For this court to conclude that there exists a "reasonable probability" that DNA test results would have exonerated the appellant of guilt would require us to engage in sheer speculation. For these reasons, we find this issue without merit.

**Conclusion**

After a review of the issues before this court, we affirm the judgment entered by the trial court.

---

[5]At the time of the appellant's trial, a separate pretrial hearing with an expert to establish the DNA evidence's reliability was necessary prior to its admission. See State v. Harris, 866 S.W.2d 583, 586-87 (Tenn. Crim. App. 1992). However, as to crimes committed after July 1, 1991, our legislature made DNA evidence admissible without a prior hearing. See Tenn. Code Ann. § 24-7-117 (1991 Supp.). See also State v. Edwards, 868 S.W.2d 682, 697 (Tenn. Crim. App. 1993). Thus, our review requires a contemporaneous assessment of counsel's alleged deficient performance.

8

_____
DAVID G. HAYES, Judge


CONCUR:



_____
JOE B. JONES, Presiding Judge



_____
JOE G. RILEY, Judge